FREEDMAN & SLATER, INC. v. UNITED STATES

No. 7956.—

Entry No. 717518.

(Decided February 19, 1951)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

MOLLISON, Judge: The merchandise the subject of this appeal for reappraisement consists of 124 raw silver fox skins which were imported into the United States from Montreal, Canada, on December 4, 1943. They were invoiced and entered at $30.50 Canadian currency per skin, and appraised at $38 Canadian currency, net, packed, per skin. The basis of neither the entered value nor the appraised value is given, but inasmuch as the values are in Canadian funds they are doubtless referable to foreign or export values, which are defined in section 402 (c), as amended by the Customs Administrative Act of 1938, and section 402 (d), respectively, of the Tariff Act of 1930.

Plaintiff called as its witness on the trial of the issue Abraham Diamond, a partner in the firm of S. & A. Diamond, which was the actual importer of the skins in issue (the plaintiff having acted as the customs broker). The witness testified that he had made the purchase of the skins in Montreal personally, and detailed the circumstances as follows: He described the skins as one lot of various qualities of an inferior or squirrely type of full silver fox skins, of the "new" catch, i. e., fresh skins brought to market about December 1st of each year. On December 3, 1943, he bought the skins, after examining them, from the sellers, Bercovitz Bros., at an average price of $30.50 per skin, Canadian currency, and in payment therefor gave three notes dated December 9, 1943, signed by the firm of S. & A. Diamond and his brother, Samuel Diamond. The witness testified that each of these notes was paid upon maturity and that the total amount in American funds equalled the total invoiced and entered value in Canadian funds, and the cancelled notes were offered and received in evidence as plaintiff's exhibits, 1A, 1B, and 1C.

The witness testified that, subsequent to purchasing the skins in issue, from December 3 to December 18, 1943, he visited the places of business of other sellers in the Montreal market, i. e., the so-called "open market," and was offered similar skins at prices varying from

$22 to $31 each, Canadian currency, and that the December 1943 market for such skins was a declining market. On December 20, 1943, he attended the annual auction sale of the Canadian Fur Auction Sales Co., Ltd., where, he stated, skins such as those in issue were sold at auction, and found the prices therein to be about 10 per centum lower than in the open market.

The foregoing is a brief statement of the evidence offered on behalf of the plaintiff for the purpose of establishing the correct value of the merchandise in issue under the valuation statute, section 402 of the Tariff Act of 1930. Various other matters were the subject of inquiry at the trial of the issue, but in view of what follows it is unnecessary to discuss them here.

The record contains no concession or legal admission that the freely offered prices of skins such as those in issue were the same whether for home consumption in Canada or for exportation to the United States, and that fact was neither directly established by the evidence offered nor is it reasonably inferable therefrom. It is true that the witness testified that such skins were offered in the "open market," i. e., by dealers and at auction, but the court cannot conclude from these facts alone that no distinction was made in such transactions between offers for home consumption and those for export.

Assuming, therefore, that by reason of the fact that the importer was a purchaser for export to the United States, the evidence offered by the plaintiff as to offers made to the importer was sufficient to establish that the price at which the importer purchased and entered the goods represented the export value thereof, as defined in section 402 (d), supra, nevertheless, there is nothing in the record to establish that that price was the same as, or higher than, the price for the same goods when sold for home consumption.

The statute, section 402 (a), requires the adoption as the value of the goods of either the foreign or the export value, whichever is higher. In this case, where, according to the brief filed in its behalf, plaintiff claims that there was no difference between the foreign and export values, it was incumbent upon it to establish that fact by evidence, if it could not secure an admission to that effect. In the absence of such evidence or admission, I have no other course upon the record before me than to hold that the plaintiff has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

I therefore find the value of the merchandise in issue to be the value found by the appraiser, and judgment will therefore issue accordingly.